Filed 8/17/16 Unmodified opinion attached

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE, etc., <br><br>    Plaintiff and Respondent, <br><br>v. <br><br>STEPHANIE NAIFEH et al., <br><br>    Defendants and Appellants. | A142994 <br><br> **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** <br> **[NO CHANGE IN JUDGMENT]** <br><br> (San Francisco City and County Super. Ct. No. CGC-11-509805) |

BY THE COURT:

It is ordered that the opinion filed herein on July 19, 2016, be modified as follows:

1. On page 7, replace the text in the footnote to the third full paragraph (appearing in the original opinion as footnote 4) with the following: "The parties do not dispute that on January 11, 2011, after BofA purportedly obtained title to the Property, respondent succeeded BofA as trustee of the HY06 Trust."

2. On page 23, in the third paragraph, replace the second sentence with the following: "Chase obtained certain rights with respect to the Loan pursuant to the 2008 transaction with the FDIC as receiver for WaMu; the March 2009 Assignment of Deed of Trust identified Chase as successor to WaMu and recorded the assignment of all

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion remains certified for publication with the exception of parts II.B., II.C, and II.D.

1

beneficial interest under the deed of trust to BofA; and respondent became successor in interest to BofA."

3. On page 24, at the end of the first full paragraph, add the following new footnote (with all following footnotes renumbered accordingly):

"Appellants contend there is no evidence that the Loan was securitized and transferred into the trust by 2007 (if ever). According to appellants, the transfer could not have been accomplished by the 2009 Assignment of Deed of Trust by Chase, since the assignment is in the present tense (pertaining to 2009) and Chase had no beneficial interest in the Loan that could be transferred to the trust (or to BofA). For this latter reason, appellants also argue there is no evidence that any interest in the Loan was ever effectively assigned to BofA. Appellants are incorrect. The 2009 Assignment of Deed of Trust was not the vehicle by which the Loan was assigned to the trust; it evinced that the Loan had *previously* been transferred to the trust, and by 2009 the trustee was changed from LaSalle Bank to Bank of America. Chase—the servicer of the trust—would not need a beneficial interest in the Loan to make the assignment from one trustee to another. On its face, the Assignment of Deed of Trust shows that BofA (as trustee of the trust) held, by March 2009, all beneficial interest in the Loan, which had been placed into the trust."

4. On page 25, replace the text of the second paragraph with the following: "We agree with the predominant view that a transfer into the securitized trust in purported violation of the terms of a PSA would render the assignment voidable rather than void; in the absence of a successful challenge by a party to the PSA, the assignment is valid and, therefore, appellants cannot argue that the transfer was ineffective on this ground." Retain the footnote appearing in the original opinion as footnote 12 at the end of the new paragraph.

The modification effects no change in the judgment.

The petition for rehearing is denied.


Date: _____          _____

                                              Jones, P.J.

Superior Court of the City and County of San Francisco, No. CGC-11-509805, Marla Miller, Judge.

Sheik Law, Mani Sheik; Murchison & Cumming, John Podesta, and Jennifer K. Letulle for Defendant and Appellant.

Parker Ibrahim & Berg, John M. Sorich, Jenny L. Merris, Heather E. Stern; Alvarado & Smith, and Theodore E. Bacon for Plaintiff and Respondent.

Filed 7/19/16 Unmodified opinion

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-HY6 TRUST, <br><br>    Plaintiff and Respondent, <br><br>v. <br><br>STEPHANIE NAIFEH, ET AL., <br><br>    Defendants and Appellants. | A142994 <br><br> (San Francisco City and County Super. Ct. No. CGC-11-509805) |

Stephanie Naifeh, Stephen Easterly, and Sam Segall appeal from a judgment entered against them for cancellation of written instruments. (Civ. Code, § 3412.) Respondent alleged that Naifeh and Segall had fraudulently signed and recorded numerous documents, which purported to divest respondent of title to the real property it had obtained through the foreclosure process after Naifeh defaulted on her loan. Appellants, on the other hand, argued that Naifeh had rescinded the loan transaction pursuant to the Truth in Lending Act (TILA, 15 U.S.C. § 1601 et seq.), the relevant security interest was therefore void, and for this and other reasons respondent had no interest in the property.

Appellants contend (1) the trial court erred in ruling that Naifeh's notice of rescission was insufficient to rescind the loan transaction; (2) respondent should not have been allowed to pursue its cancellation of instruments claims, because even if the court properly allowed an amendment at trial to substitute respondent for its predecessor in

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.B., II.C, and II.D.

1

interest, respondent omitted a quiet title claim from its amended pleading; (3) respondent did not have standing to seek cancellation of the instruments because it had no interest in the real property, due to the absence of any timely lawful assignment; and (4) the court made a number of erroneous procedural rulings.

Because of a decision issued by the United States Supreme Court after the trial court's ruling in this case, we will vacate the judgment and remand for further proceedings, including the adjudication of appellants' affirmative defense of rescission.

In the portion of the opinion certified for publication, we conclude that a borrower may rescind the loan transaction under the TILA without filing a lawsuit, but when the rescission is challenged in litigation, the court has authority to decide whether the rescission notice is timely and whether the procedure set forth in the TILA should be modified in light of the facts and circumstances of the case. In the portion of the opinion not certified for publication, we conclude that appellants' remaining arguments lack merit.

## I. FACTS AND PROCEDURAL HISTORY

### A. The Loan and Foreclosure

In March 2007, Naifeh and Dusan Ristic obtained a $500,000 residential loan (Loan) from Washington Mutual Bank, FA (WaMu), in connection with certain real property in San Francisco (Property). The note was secured by a deed of trust recorded against the Property on April 6, 2007. The deed of trust identified WaMu as the lender and beneficiary, California Reconveyance Company (CRC) as the trustee, and Naifeh and Ristic as the borrowers.

Before the loan closed, WaMu gave Naifeh and Ristic what purported to be a disclosure of the loan terms as required by the TILA. (See 15 U.S.C. § 1635.) As discussed *post*, Naifeh contends the TILA disclosures were deficient.

#### 1. Chase Becomes the Loan Servicer

On or about May 1, 2007, WaMu entered into a "Pooling and Servicing Agreement" pursuant to which the Loan (along with other loans) was securitized and, at some point, placed into the "WaMu Mortgage Pass-Through Certificate Series 2007-HY-

6 Trust." The Pooling and Servicing Agreement defined WaMu as the servicer of the trust, with authority to foreclose.

By September 25, 2008, the Federal Deposit Insurance Corporation (FDIC) placed WaMu into receivership. On or about that date, JPMorganChase, National Association (Chase) acquired certain assets and liabilities of WaMu from the FDIC, as receiver for WaMu, including WaMu's interest in the Loan. Respondent contends that Chase became the servicer of the Loan, and Chase possessed the records related to the Loan and the original note.

### 2. Assignment to Bank of America, NA, as Trustee of the HY06 Trust

An "Assignment of Deed of Trust" recorded on March 31, 2009, states that Chase, as successor in interest to WaMu, assigned "all beneficial interest" under the deed of trust to "Bank of America, National Association as successor by merger to 'LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2007-HY06 Trust' " (BofA).

### 3. Naifeh's and Ristic's Default

Meanwhile, Naifeh defaulted on the Loan in 2008 by failing to make payments. A "Notice of Default and Election to Sell Under Deed of Trust" was recorded by trustee CRC on March 31, 2009.

In 2008 and 2009, Naifeh sought a modification of the Loan. WaMu denied the modification request. Chase purportedly offered a modification, but no modification was ultimately agreed upon.

On July 10, 2009, a "Notice of Trustee's Sale" was recorded, stating that the Property would be sold at a public auction later that month. The trustee's sale was postponed to May 2010.

### 4. Naifeh's Notice of Rescission

After the notice of trustee's sale, Naifeh sent a letter to CRC on July 18, 2009, with copies to the "CFO" of WaMu and the "CFO" of Chase, notifying them that she and Ristic were rescinding the loan pursuant to "Regulation Z" (12 C.F.R. § 226.33(b)) based on certain deficiencies in the TILA disclosures. A similar letter, dated July 20, 2009,

attached a rescission form signed by Naifeh and Ristic. Naifeh contends that WaMu, Chase, and CRC received the rescission notice but took no action.

On December 18, 2009, Naifeh sent another rescission notice to WaMu, Chase, and CRC, purportedly pursuant to the TILA. That same month, she sent a written request to CRC, WaMu, Chase, and others for verification of the debt.

In January 2010, Naifeh learned that the note and deed of trust had purportedly been transferred from Chase to BofA. According to Naifeh, she sent "Bank of America" copies of her rescission notices and debt verification request. The bank acknowledged receipt of the notices and asked Naifeh for the property address, account number, and other identifying information, but then told her it could not find any records related to the property other than old mortgages that had already been paid off.

Naifeh sent follow-up letters to the "CFO" of "Bank of America, NA," as well as to WaMu, Chase and CRC on January 20, 2010, January 27, 2010, and February 2, 2010. On March 24, 2010, she sent further correspondence to Chase, CRC, and Chase's attorneys, inquiring about a variety of matters including the location and validity of the note and deed of trust, and proposing to "settle and close this matter."

### 5. Naifeh's Recording of False Documents

Beginning in April 2010—the month before the scheduled foreclosure sale of the Property—Naifeh and a friend (appellant Segall) caused several documents to be recorded with the county recorder, by which Naifeh purported to show she owed nothing on the Loan and was released from the mortgage debt.[1]

Specifically, on April 5, 2010, Naifeh recorded a "Substitution of Trustee," which she signed with the false representation that she was an "authorized representative" of CRC. The document purported to substitute Segall as trustee under the deed of trust, in place of CRC.

On April 20, 2010, Naifeh and Segall recorded a "Modification of Deed of Trust," which Segall signed as "Authorized Agent, Trustee" and Naifeh signed as "Trustor,

---

[1] Ristic conveyed his interest in the Property to Naifeh on April 2, 2010.

4

Authorized Representative." The Modification of Deed of Trust, falsely purporting to be an agreement between Naifeh and Chase, stated that the deed of trust had "erroneously set forth the amount of indebtedness secured thereby as being $500,000," and modified the deed of trust "to correctly reflect the amount of indebtedness secured thereby to be zero dollars ($0.00) and to reflect a status of 'paid as agreed.' "[2]

On April 26, 2010, Naifeh recorded a "Full Reconveyance," which Segall falsely executed as "Trustee/Authorized Agent," and which purported to reconvey the deed of trust and reflect satisfaction of Naifeh's debt.

On May 25, 2010, Naifeh recorded another Substitution of Trustee "to reflect correction of" the substitution of trustee recorded on April 5, 2010.  In this document, Naifeh falsely executed the Substitution of Trustee as "Trustor/Beneficiary" of BofA (that is, "Bank of America, National Association as Successor by Merger to LaSalle Bank NA as Trustee for WAMU Mortgage Pass-Through Certificates Series 2007-HY06") and appointed Segall as trustee "in place and instead of said" CRC.

### 6. Foreclosure Sale

Naifeh was present at the trustee's sale on May 24, 2010.  She handed out "buyer beware" notices representing that the trustee knew there were contrary claims to title.  No one bid on the Property.

A "Trustee's Deed Upon Sale" was recorded on June 2, 2010, pursuant to which CRC, as trustee under the deed of trust, granted title to the Property to BofA.

### 7. Naifeh's Recording of More False Documents

On June 11, 2010, Naifeh recorded a document entitled, "Rescission of Trustee's Deed."  This document did not assert that Naifeh had rescinded the Loan or that the security interest had accordingly become void.  Instead, Segall, falsely representing himself to be the trustee under the deed of trust, declared that: (1) the Trustee's Deed

---

[2]     Naifeh testified, and appellants maintain in their opening brief, that she signed and recorded these documents to reflect the rescission that she believed had already transpired.  The Modification of Deed of Trust says nothing about any rescission, but instead represents that the deed of trust had misstated the amount secured.

Upon Sale to BofA, recorded on June 2, 2010, "is hereby rescinded for the reason that Sale was mistakenly conducted without authorization of Beneficial Interest Holder, reference California UCC File No. 10-7227117967"; and (2) as to the deed of trust recorded on April 6, 2007, Segall (as trustee) "does hereby revoke said deed and declare that henceforth said deed shall not have any further force and effect having been revoked by this instrument, executed, acknowledged, and recorded." In short, this document purported to eliminate both the deed of sale by which BofA held title and the original deed of trust that secured Naifeh's indebtedness.

Next, having ostensibly obliterated BofA's interest in the Property, Naifeh transferred the Property to appellant Easterly. An "Agreement for Sale," recorded on October 15, 2010, and purportedly entered into by Naifeh and Easterly on October 12, 2010, referenced the sale of the Property from Naifeh (as "Owner/Seller") to Easterly. Attached as an exhibit was a "Purchase Agreement" signed by Naifeh and Easterly; appellants Adam White and Andrea White signed as witnesses.

Naifeh then executed and recorded a "Warranty Deed" on November 4, 2010, purporting to transfer title to the Property to Easterly for "value received," which was specified to be "equivalent to $407,500 U.S. Dollars." Adam White and Andrea White signed as witnesses to Naifeh's signature.

On December 30, 2010, Segall recorded an agreement and "Power of Attorney," by which Easterly granted Segall a power of attorney. A rental agreement, by which Easterly rented the Property to Adam White, was executed on January 18, 2011.

B. BofA's Lawsuit

On April 4, 2011, BofA filed a verified complaint against Naifeh, Segall, Easterly, Adam White, and Andrea White, asserting eight causes of action for cancellation of instruments, as well as causes of action to quiet title, for declaratory relief, and for injunctive relief.

Easterly, Segall, and Adam White answered the complaint. Naifeh and Andrea White did not respond, and defaults were entered against them. Naifeh moved to set aside the default multiple times, but the motions were denied. However, no default

6

judgment was entered against Naifeh, and she was present at trial and testified as a witness.[3]

1. Trial

A bench trial commenced on January 27, 2014, with BofA as the named plaintiff; after several days of trial, closing arguments were heard on July 1, 2014. The proceedings included the following.

*a. Amendment Adding U.S. Bank and Omitting Quiet Title Claim*

On January 27, 2014, BofA sought leave to amend the complaint to reflect a new trustee of the HY06 trust, replacing BofA with "U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association as Trustee as successor by merger to LaSalle Bank, National Association as Trustee for WaMu Mortgage Pass-Through Certificates Series 2007-HY6 Trust" (U.S. Bank or respondent).

Counsel represented that the proposed amended complaint would differ only in the name of the plaintiff, and U.S. Bank would be asking title to be quieted in its favor. The trial court granted leave to amend on March 5, 2014, finding no prejudice to appellants.[4]

The first amended complaint was filed on March 14, 2014. The pleading reflected not only a change in the plaintiff (from BofA to U.S. Bank), but also the omission of the quiet title cause of action. The trial court dismissed the quiet title cause of action as to former plaintiff BofA. (See Code Civ. Proc., § 581, subd. (d).)

Appellants moved to dismiss the action altogether, arguing that the dismissal of the quiet title claim had a res judicata effect and required the dismissal of ancillary claims such as cancellation of instruments. The motion was denied.

---

[3] Adam White was dismissed from the action on the first day of trial, leaving Easterly, Segall, and Andrea White as defendants. Neither Adam White nor Andrea White is a party to the appeal. Appellants represent in their opening brief that Segall died after judgment was entered, and the parties have stipulated that Naifeh is Segall's assignee, successor in interest, and personal representative for purposes of the appeal.

[4] The parties do not dispute that on January 11, 2011, after BofA had obtained title to the Property, respondent succeeded BofA with respect to the HY06 Trust.

### b. Respondent U.S. Bank's Contentions at Trial

Respondent U.S. Bank produced evidence that the eight documents recorded by Naifeh and Segall were unauthorized, fraudulent, and void. The documents were not in Chase's files, suggesting they were not executed by or at the direction of Chase. In addition, Naifeh and Segall were not authorized to execute documents on CRC's behalf, and they were neither employed by Chase nor authorized to execute documents on Chase's behalf. And Naifeh was not authorized to execute documents on behalf of BofA.

### c. Appellants' Contentions at Trial

Appellants contended, among other things, that respondent was not entitled to prevail based on two affirmative defenses: rescission under the TILA, and lack of standing or unclean hands. Rescission was appropriate, appellants argued, because the TILA disclosures were deficient in several respects: they were not grouped together and segregated from other information; the finance charge and annual percentage rate were not more conspicuous than the other loan terms; there was no disclosure of the creditor; and several key items required for an Adjustable Rate Mortgage (ARM) were not disclosed (including notification of the rate cap, a historical example, and an ARM brochure highlighting the risks of an ARM).[5] Moreover, appellants maintained, Naifeh's notice of rescission automatically rendered the security interest in the Property void, precluded the foreclosure sale, and precluded respondent from prevailing on the cancellation of instruments claims.

### 2. Trial Court's Statement of Decision

After the trial court issued a "Tentative Statement of Decision" and appellants filed an objection, the court issued its final Statement of Decision on August 21, 2014.

In its Statement of Decision, the court found that respondent had standing to pursue the lawsuit, was injured by appellants' recording of the fraudulent documents, and proved its cancellation claims. In addition, the court rejected appellants' affirmative defenses: the notice of rescission sent by Naifeh under the TILA did not effect a

---

[5]     Not all of these (if any) were identified in Naifeh's notice of rescission.

rescission; and appellants did not establish an unclean hands defense because U.S. Bank had standing and it was Naifeh and Segall who tried to "wipe out the lien by pretending to be authorized agents or employees of CRC or Bank of America or JPMorgan Chase." The court concluded: "This is not a strong position from which to argue that Plaintiff has unclean hands."

The trial court observed that, although the first amended complaint sought declaratory relief and injunctive relief, respondent's proposed statement of decision did not seek relief on those claims. The court did not address them.

Judgment was entered in favor of respondent. This appeal followed.

## II. DISCUSSION

The sole cause of action respondent pursued at trial was for cancellation of instruments; specifically, eight claims for cancellation of instruments, one for each document recorded by Naifeh or Segall.

Under Civil Code section 3412, "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." To prevail on a claim to cancel an instrument, a plaintiff must prove (1) the instrument is void or voidable due to, for example, fraud; and (2) there is a reasonable apprehension of serious injury including pecuniary loss or the prejudicial alteration of one's position. (See *Turner v. Turner* (1959) 167 Cal.App.2d 636, 641.)

Substantial evidence supported the conclusion that the recorded documents were void or voidable due to fraud, in that appellants did not have the authority they claimed to execute and record the documents. Substantial evidence also supported the conclusion that respondent would suffer pecuniary loss and a prejudicial change of position if the fraudulent documents were not cancelled, since respondent held title to the Property: respondent was successor to BofA, and BofA had obtained title to the Property by the trustee's deed of sale. Furthermore, Naifeh undisputedly failed to pay her obligations under the Loan, Chase had obtained WaMu's interest in the Loan from the FDIC, and

9

BofA had obtained all beneficiary interest under Naifeh's deed of trust (as evinced by the recorded assignment executed by Chase), providing a basis for the foreclosure proceeding against Naifeh and the trustee's deed of sale to BofA. The fraudulent documents that appellants recorded prejudiced respondent, since the documents they recorded before the trustee's sale affected the amounts recovered on the Loan, and the documents they recorded after the trustee's sale deprived respondent of clear title to the Property.

Appellants contend, however, that the judgment in favor of respondent should nonetheless be reversed because (1) Naifeh rescinded the Loan; (2) the omission of the quiet title claim precluded the cancellation of instruments claims; (3) respondent lacked standing because it actually had no interest in the Property; and (4) the trial court made procedural errors. We address each contention in turn.

A. Naifeh's Rescission Notice

As an affirmative defense to respondent's cancellation of instruments claims, appellants asserted that Naifeh rescinded the Loan on July 18, 2009, and BofA's security interest in the Property automatically became void under the TILA. As a result, appellants argue, the foreclosure sale was void, and respondent, whose interest derived from BofA, had no standing to complain about Naifeh's post-rescission fraudulent recordings.

Appellants insist this result is compelled by the United States Supreme Court's decision in *Jesinoski v. Countrywide Home Loans, Inc.* (2015) __ U.S. __ , 135 S.Ct. 790 (*Jesinoski*). We summarize relevant provisions of the TILA, consider *Jesinoski* and other cases, and conclude we must remand for the trial court's further consideration.

1. Rescission Under the TILA

The TILA protects a consumer from fraud, deception, and abuse by requiring the creditor to disclose to the consumer certain information about the subject financing. (15 U.S.C. § 1601; see, e.g., 12 C.F.R. §§ 1026.17–1026.23.)[6] It generally entitles a

---

[6] Except where otherwise indicated, all statutory references in this Part IIA are to Title 15 of the United States Code.

consumer who has secured a credit transaction with a lien on the consumer's principal dwelling (including the refinancing of an existing mortgage) to rescind a loan transaction within three business days. (§ 1635(a).) Moreover, the rescission period is extended to "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first," if the TILA disclosures (including notice of the right to rescind) are not provided. (§ 1635(f); 12 C.F.R. § 1026.23(a)(3)(i).)

To exercise the right of rescission, the consumer must notify the creditor of his or her intention to rescind "by mail, telegram or other means of written communication." (§ 1635(a).) Notice is "considered given when mailed . . . to the creditor's designated place of business." (12 C.F.R. § 1026.23(a)(2).)

The TILA sets forth a specific procedure for undoing the transaction in section 1635 subdivision (b). When the consumer exercises the right to rescind, the consumer is "not liable for any finance or other charge, and *any security interest given by the obligor . . . becomes void upon such a rescission*." (§ 1635(b). Italics added.) "Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." (§ 1635(b); see 12 C.F.R. § 226.23.) "Upon the performance of the creditor's obligations under this section," the consumer "shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the [consumer] shall tender its reasonable value." (§ 1635(b).)

Thus, as with any rescission remedy, the intent is to return the parties to the status quo ante. Unlike rescission at common law, however, the procedure set forth in section 1635(b) does not require the borrower to tender first, thus giving leverage to consumers and exposing lenders to situations in which the borrower has no funds to return the principal while the debt is no longer secured. (See *Merritt v. Countrywide Financial Corp.* (9th Cir. 2014) 759 F.3d 1023, 1030 (*Merritt*).)

11

Furthermore, a creditor's failure to comply with the requirements of section 1635 subjects it to actual and statutory damages, attorney's fees, and costs. (§ 1640.) And if the consumer tenders the property to the creditor, the creditor must take possession of it within 20 days or "ownership of the property vests in the [consumer] without obligation on [the consumer's] part to pay for it." (§ 1635(b).)

However, after setting forth the rescission procedures we have just described, Congress added the following proviso: "The procedures prescribed by this subsection shall apply *except when otherwise ordered by a court*." (§ 1635(b), italics added; see 12 C.F.R. § 226.23.) By turning to the court, a lender may change its fortunes in at least two ways. First, it may challenge the validity of the rescission—that is, whether there was a failure to disclose information, such that the time for rescission under the TILA was extended to three years. Second, whether or not the lender agrees that the rescission was timely and valid, it may request that a different procedure be used to effectuate the rescission remedy: thus, courts have sometimes required the borrower to tender the loan proceeds *first*, before the creditor must give up its security interest. (See, e.g., *Yamamoto v. Bank of New York* (9th Cir. 2003) 329 F.3d 1167, 1170–1173 (*Yamamoto*).)

2. The Trial Court's Decision

As mentioned, the trial court in this case rejected appellants' rescission defense on two grounds. First, recognizing a split in authority but siding with the Ninth and Tenth Circuit Courts of Appeals, the court concluded that a notice of rescission is not, in itself, sufficient to rescind, and that an actual lawsuit must be filed within the three-year period: "Naifeh did not file a lawsuit to enforce whatever rescission rights she had in a timely way, and the Promissory Note and Deed of Trust were never rescinded."

Second, the court ruled, even if a mere notice of rescission could suffice, in this case "the evidence does not support [appellants'] position that the rescission was self-executing and sufficient to justify recording the Substitution of Trustee and subsequent documents executed and/or recorded by [appellants]." The court concluded that "the mere sending of the notices did not have the automatic effect of rescinding the transaction." And it rejected Naifeh's proposition that rescission was automatic because

12

respondent (or its predecessors) had acquiesced in it, since the evidence did not show an acquiescence and, in fact, they were foreclosing on the Property.

Appellants contend the court erred in light of *Jesinoski, supra*, 135 S.Ct. 790.

### 3. *Jesinoski*

The United States Supreme Court issued its decision in *Jesinoski* several months after the trial court's decision. In *Jesinoski*, the borrowers had sent a rescission letter three years after refinancing their home, and the lender's successor did not acknowledge its validity. (*Jesinoski, supra*, 135 S.Ct. at p. 791.) About a year later—four years after the transaction originating the loan—the borrowers filed a lawsuit seeking to enforce the rescission. (*Ibid.*) Like the trial court here, the federal district court and the Eighth Circuit Court of Appeals concluded there had been no rescission because the borrowers had not filed a lawsuit within three years of the date of the loan's consummation. (*Ibid.*)

The Supreme Court reversed, holding that the borrower need only send the notice of rescission, not file a lawsuit, within the three-year period. The court explained that section 1635(a) sets forth unequivocally how the right to rescind is to be exercised: "It provides that a borrower 'shall have the right to rescind . . . *by notifying the creditor, in accordance with regulations of the Board, of his intention to do so'* (emphasis added). The language leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely. The statute does not also require him to sue within three years." (*Jesinoski*, *supra*, 135 S.Ct. at p. 792.)

### 4. Impact of *Jesinoski* on Naifeh's Rescission Notice

#### a. Timeliness of Naifeh's Rescission Notice

Naifeh's notice of rescission occurred within the three-year period, since her loan originated on March 14, 2007, and she sent her rescission notice on July 18, 2009. Under *Jesinoski*, the fact that Naifeh did not file a lawsuit within the three year period does not render the notice untimely.

## b. *Effect of Naifeh's Rescission Notice*

Respondents urge, however, that the trial court correctly concluded that Naifeh's rescission notice did not have the automatic effect of rescinding the transaction (that is, without respondent's acquiescence or a court approving the rescission), and nothing in *Jesinoski* suggests otherwise. On this point, the parties each rely on cases that ostensibly support their respective positions.

Appellants argue, and several cases remark, that rescission *is* automatic upon the consumer's notice under the procedure set forth in section 1635(b). (See, e.g., *Merritt, supra,* 759 F.3d at p. 1030 [under the procedure set forth in section 1635(b), "all that the consumer need do is notify the creditor of his intent to rescind," and the "agreement is then automatically rescinded"]; *Sherzer v. Homestar Mortg. Servs.* (3d Cir. 2013) 707 F.3d 255, 258 ["rescission occurs automatically when the obligor validly exercises his right to rescind," as opposed to having to file a lawsuit]; *Williams v. Homestake Mortgage Co.* (11th Cir. 1992) 968 F.2d 1137, 1140 [agreement "automatically rescinded" when consumer notifies the creditor of his intent to rescind]; see *Lippner v. Deutsche Bank Nat'l Trust Co.* (N.D. Ill. 2008) 544 F.Supp.2d 695, 702 [where creditor conceded it had violated the TILA and the consumer had timely exercised her right to rescind, the creditor was obligated under section 1635 to honor the rescission demand, and the failure to do so was a further TILA violation].) And the Court stated in *Jesinoski, supra*, 135 S.Ct. at p. 792, "rescission is effected when the borrower notifies the creditor of his intention to rescind."

On the other hand, respondent points us to *Yamamoto, supra,* 329 F.3d 1167, on which the trial court relied. In *Yamamoto*, the borrowers sent the lender a notice of rescission and then sued, seeking damages and rescission. The district court ruled that the borrowers had to tender the loan proceeds; when they were unable to do so, the court dismissed their lawsuit. Noting that section 1635(b) expressly permits a court to modify the procedures set forth in that section, the Ninth Circuit Court of Appeals held that the trial judge had the discretion to "condition" rescission on the borrower's tender. If the lender had *acquiesced*, the transaction would have been rescinded automatically; but

14

because the lender *contested* the rescission notice and produced evidence about the sufficiency of the disclosures, it "cannot be that the security interest vanishes immediately upon the giving of notice." (*Yamamoto, supra*, 329 F.3d at p. 1172.) The court explained: "Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any. Rather, under the statute and the regulation, the security interest 'becomes void' only when the consumer 'rescinds' the transaction. In a contested case, this happens when the right to rescind is determined in the borrower's favor." (*Ibid*.)[7]

Yamamoto continued: "Thus, a court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations. Our precedent is consistent with the statutory and regulatory regime of leaving courts free to exercise equitable discretion to modify rescission procedures. This also comports with congressional intent that 'the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required by the act.' S.Rep. No. 368, 96th Cong., 2d Sess. 29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 236, 265." (*Yamamoto, supra*, 329 F.3d at p. 1173.)[8]

---

[7] *Yamamoto* (and the trial court in this case) quoted *Large v. Conseco Finance Servicing Corporation* (1st Cir. 2002) 292 F.3d 49, 54–55, which observed: " '[N]either the statute nor the regulation establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract.' [Citation] Instead, the 'natural reading' of the language of § 1653(b) 'is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined . . . . Until such decision is made, the [borrowers] have only advanced a claim seeking rescission.' " (*Yamamoto, supra*, 329 F.3d at p. 1172.) This suggests that no rescission occurs until the lender or a court says so; as such, it is a broader concept than the one at the heart of *Yamamoto* and on which we rely: that Congress has given courts authority to change the procedural order of the rescission process by requiring the borrower to tender first in the appropriate case.

[8] Appellants urge that *Yamamoto* is inconsistent with *Merritt* and *Jesinoski*. To the contrary, *Merritt* fully embraced *Yamamoto* and confirmed its premise that courts have authority to modify the statutory rescission process; *Merritt* merely held that the court

*Yamamoto* is readily harmonized with the cases finding automatic rescission. A timely notice of rescission automatically renders the security interest void under section 1635(b), where the creditor *acquiesces* in the rescission or *ignores* it. However, once the creditor *contests* the notice of rescission, the court may alter the procedure otherwise dictated by the TILA, determine whether there were inadequate disclosures that would extend the rescission period to three years, and decide whether equity compels a requirement that the borrower tender the loan proceeds before the lender returns the amounts paid and releases its security interest. This accomplishes the legislative goals of protecting the borrower from nondisclosures, motivating the lender to respond to the borrower's concerns, and returning the parties to the status quo ante in a manner consistent with the facts and equities of the particular situation.

Indeed, even those federal appellate cases on which appellants rely for the proposition that rescission is "automatic" expressly recognize the authority of courts to condition the voiding of the security interest for equitable reasons. (E.g., *Merritt, supra,* 759 F.3d at pp. 1030–1032; *Sherzer v. Homestar Mortg. Servs., supra,* 707 F.3d at p. 260 ["if either the obligor or the creditor sues after the obligor sends notice of rescission, the court has the discretion to modify the order in which the obligor and creditor are required to exchange property or disclaim security interests"]; *Williams v. Homestake Mortgage Co., supra,* 968 F.2d at pp. 1141–1142 [to effect a "realistic recognition of the full scope of the statutory scheme," "we hold that a court may impose conditions that run with the voiding of a creditor's security interest upon terms that would be equitable and just to the

could not dismiss an action at the *pleading* stage for plaintiff's failure to tender before filing suit (as opposed to the summary judgment stage at issue in *Yamamoto*), because the creditor had not yet produced evidence regarding compliance with the disclosure requirements and the court could not evaluate the relevant equitable considerations. (*Merritt, supra*, 759 F.3d at pp. 1030–1032.) *Jesinoski* ruled that the TILA's language "leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind." (*Jesinoski, supra*, 135 S.Ct. at p. 793.) But *Jesinoski* dealt with the means by which the right to rescind is initially effected, not the manner in which the procedural requirements for the rescission remedy may be reordered by a court to reflect the equities of the situation.

parties in view of all surrounding circumstances," including "conditioning the voiding of [the lender's] security interest"].)

Moreover, the plain language of the statute compels the conclusion that a court is empowered to facilitate equity in implementing a rescission under the TILA. Section 1635(b) provides that "[t]he procedures prescribed *by this subsection* shall apply except when otherwise ordered by a court." (Italics added.) Those procedures include the voiding of the security interest, the termination of the obligor's liability, and the process for restoring the parties to the status quo. The unequivocal expression of legislative intent is that the court may modify any or all of these matters to assure that the rescissionary remedy is imposed equitably in a given case.

### 5. Implications for this Case

In light of *Jesinoski*, appellants urge that Naifeh's notice of rescission divested BofA of its security interest in the Property, renders the foreclosure sale void, and deprived respondent of standing to pursue its claims for cancellation of instruments.

But those conclusions are premature. Appellants raised the rescission issue as an affirmative defense in this case. They therefore placed at issue whether there was, in fact, a timely rescission, which requires proof that the disclosures required by the TILA were not provided, so as to extend the rescission period to three years. That issue has not yet been decided by the trial court.

If the TILA disclosures were *not* deficient, Naifeh's rescission notice under the TILA was to no avail (since it was sent beyond the three-day period), appellants' affirmative defense fails, and the security interest in the Property was not void. In that instance, respondent would be entitled to judgment on its cancellation claims.

On the other hand, if the TILA disclosures *were* deficient, Naifeh's notice of rescission was timely because it was sent within the extended three-year period, and the trial court may, under section 1635(b), determine what procedure to impose to return the parties to the status quo ante, including whether Naifeh should be required to tender. (Although Naifeh proposed resolving her dispute with respondent's predecessors, we are not pointed to any indication in the record that she actually made a valid tender of full

17

and unconditional performance, or demonstrated the willingness and ability to pay back the loan proceeds she received in the financing transaction.)  If a tender is required and not made, Naifeh will not have met the requirements for a rescissionary remedy, and therefore may not use rescission as an affirmative defense.  But if the rescissionary remedy *is* completed, the security interest in the Property is void, the foreclosure sale is void, and the trial court must reevaluate respondent's standing and the merits concerning respondent's claims for cancellation of instruments.[9]

We will therefore vacate the judgment in this case and remand to the trial court for further proceedings with respect to appellants' affirmative defense of rescission.  We

---

[9]     At oral argument, appellants contended the trial court lacks authority to decide whether the rescission notice was valid, because U.S. Bank did not contest the notice within 20 days of receipt.  They base this on the TILA's procedure requiring lenders to return funds and take steps to reflect the security interest's termination within 20 days after receiving the notice. (See also *Paatalo v. JPMorgan Chase Bank* (D. Or. November 12, 2015, No.6:15-cv-01420-AA) 2015 U.S.Dist. Lexis 153105, pp. *12, *13 [lender must unwind the loan or file a lawsuit within the "TILA statute of limitations"].) However, the TILA does not specify that a lender in fact loses its right to challenge the rescission, or a court loses its statutory authority to modify the rescission procedures, merely because the lender did not contest the rescission notice within 20 days.  Indeed, the 20-day response period is part of the procedure the TILA explicitly states a court *may* modify.  (We also note that U.S. Bank's predecessors may not have seen a reason to challenge Naifeh's notice of rescission because, before *Jesinoski*, the Ninth Circuit law was that no rescission was effected unless the borrower had actually filed a lawsuit.)  In addition, U.S. Bank countered at oral argument that appellants cannot pursue the rescission theory at all, because the foreclosure sale has already occurred—arguing implicitly that a borrower must enforce the rescission and obtain an injunction precluding the sale.  (See *Mikels v. Estep* (N.D. Cal. April 19, 2016, No.12-cv-00056-EMC) 2016 U.S.Dist. Lexis 52450, p. *3 [TILA rescission provision no longer applies once the property is sold, even if a valid notice of rescission was sent before the sale]; see also *Jacques v. Chase Bank USA, N.A.* (D. Del. February 3, 2016, No.15-548-RGA) 2016 U.S.Dist. Lexis 12522  p. *29 & fn. 10 [under federal law, borrower's TILA claim against lender was time-barred, because there is a one-year statute of limitations for violations of section 1635(b), which runs from 20 days after borrower provides notice of rescission].)  We need not and do not decide these issues, because the trial court did not decide them, and the parties did not fully brief them in this appeal.  And in this case, appellants were the ones who placed the rescission at issue.

nevertheless address appellants' remaining arguments, both to complete our analysis and to guide the court and parties upon remand.

B. <u>Dismissal of Quiet Title Claim Did Not Preclude Cancellation of Instruments</u>

Appellants contend the court erred by allowing respondent to file a first amended complaint that substituted respondent for BofA and omitted the quiet title cause of action.

Further, appellants urge, the ensuing dismissal of the quiet title cause of action precluded the cancellation of instruments claims because those claims are dependent on a quiet title cause of action and because the dismissal had a preclusive effect. Appellants are incorrect.

1. <u>Leave to Amend</u>

A trial court has broad discretion to allow a party to amend its pleadings, even after the commencement of trial. (See Code Civ. Proc., § 473, subd. (a)(1).) In deciding whether to allow the amendment, courts may consider whether facts or legal theories are being changed, and whether the opposing party will be prejudiced. (*City of Stanton v. Cox* (1989) 207 Cal.App.3d 1557, 1563.) We review for an abuse of discretion. (*Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1377.)

Appellants argue that the request to substitute respondent for BofA should have been denied because respondent knew for years that it was the appropriate plaintiff. They argue that the amendment changed the identity of the real party in interest and the omission of the quiet title cause of action changed the legal theories in the case, after the parties had litigated for nearly three years based on BofA's representation that it was the true titleholder.

Appellants fail to establish a prejudicial abuse of discretion. They do not show they would have obtained a better result if respondent had not been substituted in place of BofA. To the extent appellants had prepared to challenge BofA's title, their work did not go for naught, since respondent claimed its interest as BofA's successor. Omitting the quiet title claim merely *removed* issues, rather than adding any. And while appellants argue that, with the absence of the quiet title cause of action, they did not have the

19

opportunity to obtain a court order quieting title in *their* name, they fail to establish that title would have been quieted in their name if the quiet title claim had proceeded.

Appellants contend they were prejudiced because respondent at one point indicated it would not verify a complaint for quiet title. They reason that, if respondent had substituted into the case before trial began, it would have dismissed the entire action and the trial would never have taken place. But the record discloses no basis for this conclusion. To the contrary, the fact that respondent pursued the cancellation of instruments claims at trial suggests it would not have dismissed the cancellation of instruments claims if it had been substituted in earlier.

### 2. Omission of Quiet Title Cause of Action

Appellants argue that there is no independent cause of action for cancellation of written instruments, and the claim is merely ancillary to a cause of action to quiet title; therefore, they maintain, the dismissal of the quiet title cause of action served as a judgment in appellants' favor and precluded the prosecution of the purported causes of action for cancellation of instruments. Appellants misperceive the law.

California courts have recognized a cause of action for cancellation of instruments for over 70 years. (E.g., *Zakaessian v. Zakaessian* (1945) 70 Cal.App.2d 721, 725 [allegation of facts showing a deed's invalidity constitutes a sufficient allegation of a "cause of action" under Civil Code section 3412 for cancellation of instruments].) The federal cases on which appellants rely are not to the contrary. The unremarkable point underlying these federal cases is that, if the alleged wrong purportedly justifying the cancellation (e.g., fraud) has not been adequately pleaded, there is no independent basis for maintaining a cancellation claim. (E.g., *Yazdanpanah v. Sacramento Valley Mortg. Group* (N.D.Cal. November 30, 2009, No. C 09-02024-SBA) 2009 U.S.Dist. Lexis 111557, p. *17 (*Yazdanpanah*) [failure to adequately plead fraud or other wrongdoing precluded claim for cancellation of trust deed]; *Qureshi v. Countrywide Home Loans, Inc.* (N.D.Cal. March 9, 2010, No. C 09-4198-SBA) 2010 U.S.Dist. Lexis 21843, pp.*21, *22 (*Qureshi*) [cause of action to cancel trustee's deed did not state a claim for relief, due to the failure to allege underlying fraud with particularity]; *McFarland v. JP Morgan Chase*

20

*Bank* (C.D. Cal. April 28, 2014, No. EDCV13-01838-JGB(OPx)) 2014 U.S.Dist. Lexis 62145, p. *34 [failure to allege sufficient facts to state a claim under any other cause of action, or any other facts showing the instruments were void, precludes claim for cancellation of instrument, which is an equitable remedy dependent on a substantive basis]).[10]

Here, respondent not only alleged, but presented evidence, that the documents Naifeh signed and recorded were void, that respondent's claim to title was adversely affected, and that respondent suffered harm as a result. Those are the elements of a claim for cancellation of instruments under Civil Code section 3412, and it makes no difference whether respondent also sought to quiet title or pursued any other relief.

Appellants point out that "a complaint which consists of two counts, one to quiet title to real property and the other, as incidental to the first count, to have declared void an instrument under which particular defendants assert title states only one cause of action." (*Ephraim v. Metropolitan Trust Co.* (1946) 28 Cal.2d 824, 833.) That is true,

---

[10] *Qureshi* does state that a claim for cancellation of a deed "is a request for a remedy as opposed to an independent cause of action" (*Qureshi*, 2010 U.S.Dist. Lexis 21843 at p. 21), citing *Porter v. Superior Court* (1977) 73 Cal.App.3d 793, 799 (*Porter*). But *Porter* said no such thing; it merely observed that an action for cancellation of a deed was an equitable claim for which there was no right to a jury trial. (*Id*. at p. 799.) *Yazdanpanah* stated that a request to cancel a deed " 'is dependent upon a substantive basis for liability, [and it has] no separate viability,' " (2009 U.S.Dist. Lexis 111557 p. 17), quoting *Glue-Fold, Inc. v. Slautterback Corp*. (2000) 82 Cal.App.4th 1018, 1023 (*Glue-Fold*). But *Glue-Fold* does not mention anything about causes of action for cancellation of written documents; in footnote three, it states that a claim for a constructive trust is not an independent cause of action. (*Id*. at p. 1023 fn. 3.) Likewise, *Xochitl Vivanco Duenas v. Ocwen Loan Servicing, LLC* (E.D. Cal. September 16, 2014, No.1:14-cv-00406-JLT) 2014 U.S.Dist. Lexis 130610, pp.*38, *39, and *Sirrium v. Bank of Am., N.A.* (E.D.Cal. June 25, 2012, No.2:12-cv-00543 LKK KJN PS) 2012 U.S.Dist. Lexis 88483, p. *6, which state that claims to cancel an instrument are not independent claims for relief, can be upheld on the ground that the plaintiff had not alleged any cognizable basis on which a claim for relief could be based. Lastly, appellants urge that cancellation of instruments is just an equitable remedy, citing *Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 785. But *Moore* refers to "pleaded *causes of action* for . . . cancellation of written instruments," as well as prayers for equitable relief including the cancellation of liens. (*Id*. at pp. 784–785. Italics added.)

21

because both counts derive from the same facts. (*Ibid*.) But that does not mean it would be impermissible to proceed on those facts by asserting just one of the two counts.

### 3. Preclusive Effect of Dismissal of Quiet Title Action

Appellants argue that "the dismissal with prejudice of the quiet title claim, whether attributed to Respondent [U.S. Bank] or to BofA, serves as a final judgment and adjudication that title is quieted in Appellants, precluding Respondent from pursuing title to the Property or any relief predicated on having title." [11]

Appellants' argument is incorrect. Res judicata and collateral estoppel arise upon a valid final judgment, and have preclusive effect as to *other* litigation. The very cases on which appellants rely make this clear. (E.g., *Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 821 [dismissal with prejudice of a breach of fiduciary duty claim in one action constituted a determination on the merits, barring re-litigation of those issues as affirmative defenses in another action].)

*Campbell v. Security Pac. Nat. Bank* (1976) 62 Cal.App.3d 379 (*Campbell*), on which appellants also rely, is inapposite. In *Campbell*, the court ruled that a plaintiff's dismissal with prejudice of a negligence claim against the defendant employee operated as collateral estoppel to preclude a finding of liability against the defendant employer on a respondeat superior theory at trial. (*Id*. at p. 386.) Whether a plaintiff's dismissal of an employee precludes that same plaintiff from pursuing the employer on a *respondeat superior* theory has nothing to do with whether BofA's dismissal of a quiet title cause of action precludes respondent from pursuing a cancellation claim.

Appellants fail to establish error based on the addition of respondent as plaintiff and the omission of the quiet title cause of action.

---

[11] The trial court dismissed the quiet title cause of action as to BofA only, and appellants argue that it should have been dismissed as to respondent. But no dismissal as to respondent was necessary, because respondent proceeded at trial upon the amended complaint, which superseded the original complaint and did not contain any quiet title cause of action to be dismissed.

C. Respondent Had Standing

Appellants argue that respondent did not have standing to pursue its cancellation claims because (1) it did not produce evidence that it had an interest in the Property and (2) the securitized Loan was not timely added to the investment trust, of which BofA and later respondent became trustee. Their arguments are without merit.

1. Evidence of Interest in the Property

"One without any title or interest in the property cannot maintain" a cause of action for cancellation. (*Osborne v. Abels* (1939) 30 Cal.App.2d 729, 731; see *Chao Fu, Inc. v. Chen* (2012) 206 Cal.App.4th 48, 58–59 [without an interest in the property, a party has no standing to ask the court to quiet title in the property or pursue an action to cancel a trustee's deed or other instrument transferring title].)

Substantial evidence supports the trial court's finding that respondent had an interest in the Property sufficient to give it standing to pursue its cancellation claims. Chase obtained the Loan pursuant to the 2008 transaction with the FDIC as receiver for WaMu; the March 2009 Assignment of Deed of Trust identified Chase as successor to WaMu and recorded the assignment of all beneficial interest under the deed of trust to BofA; and respondent became successor in interest to BofA. Furthermore, the Trustee's Deed Upon Sale, recorded in June 2010, evinces that BofA obtained title to the Property, and respondent succeeded to BofA's interest.

Of course, appellants could *challenge* this evidence and argue that the assignments and security interest were not really valid—and indeed they did. They argued at trial (and continue to argue now) that respondent did not prove an interest in the Property because it did not produce the original note, BofA sent letters to Naifeh in 2010 disclaiming any interest in the Property, and Chase could not have assigned any ownership or beneficial interest to BofA because Chase was merely the servicer of Naifeh's note. But the fact that appellants could challenge the evidence of respondent's interest does not mean respondent lacked standing to *pursue* the cancellation claims and assert *its* arguments that the statute entitled it to relief. (See *Clayworth v. Pfizer, Inc*.

23

(2010) 49 Cal.4th 758, 789 [whether a party may be ultimately unable to obtain remedies "does not demonstrate that it lacks standing to argue for its entitlement to them"].)

### 2. Securitization

Appellants assert that, in the context of the securitization process of the Loan, the Loan was not timely transferred to the HY06 trust. They argue that the Pooling and Service Agreement (PSA) for the HY06 trust set a closing date of May 23, 2007, for assigning loans into the trust. They further claim that respondent could not prove Naifeh's loan was placed into the HY06 trust by that date, and that respondent's attorney acknowledged at trial that there was no evidence in the record establishing when Naifeh's note was placed into the trust. On this basis, appellants urge that the assignment of the deed of trust to BofA (as trustee of the HY06 trust) was void, and thus neither BofA nor respondent could pursue the cancellation of instruments claims.

Appellants' argument is unpersuasive. In the first place, appellants lack standing to challenge the assignment to BofA on this ground, since they were not parties to the PSA, and the defect they assert would merely render the assignment voidable (not void). (E.g., *Banares v. Wells Fargo Bank, N.A.* (N.D.Cal. March 7, 2014, No. C-13-4896 EMC) 2014 U.S.Dist. Lexis 29909, p. *5; see *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 936 (*Yvanova*) [borrower who challenges foreclosure on the ground that an assignment to the foreclosing party is merely voidable is asserting an interest that belongs "solely with the parties to the assignment rather than to herself"].)

Appellants' reliance on *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*) is unavailing. In *Glaski*, the borrower alleged that a foreclosure sale was wrongful because the transfer of his loan to a securitized trust occurred after the trust's closing date, in violation of the PSA. (*Id.* at pp. 1093–1095.) *Glaski* recognized the prevailing law holding that a merely voidable assignment could *not* be contested by the borrower, because the borrower was not a party to the PSA. (*Id.* at pp. 1094–1095.) But *Glaski* held that the borrower did have standing to contest the assignment because, in *Glaski*'s view, an untimely transfer would render it void (rather than merely voidable) under New York law, by which the investment trust was formed. (*Id.* at pp. 1094–1098.)

24

However, courts other than *Glaski* have held that a recorded assignment dated after the closure of the investment trust would *not* render the assignment void, but merely voidable. (E.g., *Boza v. US Bank Nat'l Ass'n.* (C.D.Cal. October 28, 2013, No. LA CV12-06993 JAK (FMOx)) 2013 U.S.Dist. Lexis 161196, pp.\*18–\*20; *Calderon v. Bank of Am., N.A.* (W.D.Tex. 2013) 941 F.Supp.2d 753, 766–767; *Sandri v. Capital One, N.A.* (*In re Sandri*) (Bankr.N.D. Cal. 2013) 501 B.R. 369, 375–376.) Indeed, the case on which *Glaski* relied in opining that the assignment would be void has since been overturned. (*Wells Fargo Bank, N.A. v. Erobobo* (NYApp.Div. 2015) 9 N.Y.S.3d 312, 314; *Turner v. Wells Fargo Bank N.A.* (*In re Turner*) (9th Cir. Bankr. June 2, 2015, No. NC-14-1139-KiTaD) 2015 Bankr. Lexis 1821, p. \*23.) Moreover, *Glaski*'s interpretation of New York law has been explicitly rejected by the Second Circuit Court of Appeals. (*Rajamin v. Deutsche Bank Nat'l Trust Co.* (2d Cir. 2014) 757 F.3d 79, 88–90 [borrower has no standing to challenge an assignment allegedly in violation of a PSA governed by New York law, rejecting *Glaski*'s view that the violation would render the assignment void rather than voidable].)

We agree with the predominant view that a transfer into the securitized trust in purported violation of the terms of a PSA would render the assignment voidable rather than void; therefore, appellants have no standing to challenge the assignment to BofA on this ground.[12]

---

[12] During the pendency of this appeal, our Supreme Court issued its decision in *Yvanova*, *supra*, 62 Cal.4th 919. We requested and received from the parties supplemental briefing on the effect, if any, of *Yvanova* on the issues in this case. We conclude that *Yvanova* is unhelpful to appellants. *Yvanova* approved *Glaski* only to the extent that a borrower who has suffered a nonjudicial foreclosure has standing to sue for wrongful foreclosure based on an allegedly void assignment even if the borrower was not a party to the assignment. That is not the issue here. Although the court in *Yvanova* noted *Glaski's* view that an assignment dated after the closure of the assignee investment trust would render the assignment void under applicable New York law, *Yvanova* did *not* affirm *Glaski* in this respect. (*Yvanova*, *supra*, 62 Cal.4th at p. 931.) Based on the prevailing law, we conclude that appellants did not establish the assignment could be void, and therefore did not establish their standing to contest it.

Furthermore, even if appellants could challenge the validity of the assignment to BofA based on an untimely transfer of the Loan into the HY06 trust, appellants did not establish that the Loan was, in fact, not timely transferred to the trust. The Assignment of Deed of Trust document that was recorded on March 31, 2009, does not prove that the Loan had never become part of the trust until then. The deed of trust automatically follows an assignment of the note, no matter when the assignment is recorded, and appellants cite to no evidence that the note was not transferred to the trust by the deadline. (See *Yvanova, supra,* 62 Cal.4th at p. 927; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 271–272, disapproved on another ground in *Yvanova, supra,* 62 Cal.4th at p. 939 & fn. 13; Civ. Code, § 2936; see also Civ. Code, § 2934.)

Appellants fail to show error in the court's ruling that respondent had standing.

D. The Trial Court's Other Rulings Were Not Improper

Lastly, appellants contend the trial court erred in denying their motion for judgment on the pleadings, denying Naifeh's request for relief from default, and denying appellants leave to file a cross-complaint to assert a claim for quiet title. Their arguments are meritless.

1. Judgment on the Pleadings

Appellants Segall and Adam White filed a motion for judgment on the pleadings with respect to BofA's complaint, maintaining that the court lacked jurisdiction and that the complaint was not properly verified, was missing essential allegations, and failed to show BofA had an interest in the Property. The motion was denied. Appellants contend the court was wrong because they had demonstrated "there were significant problems with standing, ownership, and the right to foreclose[.]"

A motion for judgment on the pleadings tests whether the allegations of the pleading state a cause of action. (Code Civ. Proc., § 438, subd. (c)(1)(B).) Appellants fail to establish that the allegations of BofA's complaint did not state a cause of action as a matter of law. Moreover, any error in denying the motion for judgment on the pleadings was harmless, since respondent presented sufficient evidence at trial that it had standing to pursue its claims.

26

## 2.  Naifeh's Request for Relief From Default

Appellants contend the court erred by denying Naifeh's requests to set aside her default and allow her to file an answer, particularly since the court allowed respondent to substitute in as plaintiff and file an amended complaint.  (See Code Civ. Proc., § 473, subd. (a)(1); *Leo v. Dunlap* (1968) 260 Cal.App.2d 24, 27–28.)

Appellants fail to establish an abuse of discretion.  Moreover, although the court allowed respondent to file an amended complaint, Naifeh has not shown she was prejudiced by not being able to file an answer, especially since she was allowed to testify and assert her TILA defense at trial.

## 3.  Denying Leave to File Quiet Title Claim

Appellants contend the court abused its discretion in denying their request at trial to file a cross-complaint to assert a cause of action for quiet title, once respondent's amended complaint omitted the quiet title claim from the case.  Although the court noted that appellants could have filed a cross-complaint or sought affirmative relief on the quiet title issue earlier, appellants urge that they had no reason to do so since the matter was at issue due to the quiet title cause of action brought by BofA.

We find no prejudicial abuse of discretion.[13]

## III.  DISPOSITION

---

[13]  Appellants have filed a request in this court for judicial notice of a "Judgment of Quiet Title" recorded by Naifeh and Easterly with the San Francisco County Assessor-Recorder in November 2014.  The document refers to BofA as grantee and appellants as grantees and attaches a part of the trial court's statement of decision, the register of actions, and a narrative by an attorney on appellants' behalf.  We deny the request because the material does not add anything, for purposes of this appeal, to the actual statement of decision already contained in the record.

Due to appellants' penchant for recording documents, we also add that appellants and their attorney(s) should be cognizant of Penal Code section 115, which makes it a felony to record false documents under specified circumstances.  We do not opine whether that statute has been violated in this case.

The judgment is vacated. On remand, the trial court shall determine whether the disclosures provided to Naifeh and Ristic regarding their loan were in compliance with the TILA. If so, the judgment shall be reinstated. If not, the trial court shall consider the procedure by which the rescission remedy shall be finalized, rule on appellants' affirmative defense of rescission, conduct such further proceedings as may be consistent with this opinion, and enter judgment accordingly. Appellants shall recover their costs in this appeal from respondent.

_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.

(A142994)

29

Superior Court of the City and County of San Francisco, No. CGC-11-509805, Marla Miller, Judge.

Sheik Law, Mani Sheik; Murchison & Cumming, John Podesta and Jennifer K. Letulle for Defendant and Appellant.

Parker Ibrahim & Berg, John M. Sorich, Jenny L. Merris, Heather E. Stern; Alvarado & Smith, and Theodore E. Bacon for Plaintiff and Respondent.