Filed 6/24/26  The Colony at Cal. Oaks etc. v. Majestic Asset Management CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE COLONY AT CALIFORNIA OAKS HOMEOWNERS ASSOCIATION,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MAJESTIC ASSET MANAGEMENT LLC et al.,<br><br>    Defendants and Appellants. | D085140<br><br>(Super. Ct. No. MCC2000132)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed on June 18, 2026, be modified to add pagination.

There is no change in the judgment.

MCCONNELL, P. J.

Copies to:  All parties

Filed 6/18/26  The Colony at Cal. Oaks etc. v. Majestic Asset Management CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE COLONY AT CALIFORNIA OAKS HOMEOWNERS ASSOCIATION, | D085140 |
| Plaintiff and Respondent, | (Super. Ct. No. MCC2000132) |
| v. | |
| MAJESTIC ASSET MANAGEMENT LLC et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Riverside County, Eric A. Keen, Judge.  Affirmed as modified.

Reid & Hellyer, Michael G. Kerbs, Douglas A. Plazak; Estavillo Law Group and Ignacio J. Lazo for Defendants and Appellants.

Berding & Weil, Anne L. Rauch, Trinette Sachrison; Epsten and Joseph A. Sammartino for Plaintiff and Respondent.

Majestic Asset Management, LLC (Majestic), and its members, Jen and Hai Huang, own and operate a golf course within a community of many

single-family homes governed by The Colony at California Oaks Homeowners Association (the Association). During the pendency of a prior case the Association obtained a foreclosure decree to remedy Majestic's breaches of maintenance obligations. The performance of those responsibilities was secured by a deed of trust to the golf course in favor of the Association. In another transaction, Majestic gave Tso Jen Chu a deed of trust to the golf course as security for repayment of loans Chu made to Majestic.[1]

In the current case attacking the validity of the deed of trust given to Chu, the trial court entered a judgment declaring that deed void as based on fraudulent and fictitious loans, declaring the deed of trust to the Association to be the senior lien on the golf course, and giving preclusive effect to the finding in the prior case that the Huangs and Majestic were alter egos. Appellants claim the trial court erred by using principles of preclusion to impose alter ego liability, by granting leave to the Association to amend the complaint to add a fraud count, and by voiding the deed of trust to Chu based on fraud. We agree with the first claim but not the other two. We modify the judgment to strike the portion concerning alter ego liability and affirm the judgment as modified.

I.

BACKGROUND

A.    *Prior Case*

The parties have been litigating over the use and maintenance of the golf course for more than a decade. We summarize that litigation based on

---

[1]    Chu is described by appellants as an "acquaintance[ ] unrelated to the Huangs" and by the Association as "as an old family friend of Jen Huang's whom the trial court found illegally participated in Appellants' dishonest scheme."

our opinion in *Majestic Asset Management LLC v. The Colony at California Oaks Homeowners Assn.* (2024) 107 Cal.App.5th 413, 417–422.

Majestic bought the golf course from the prior owners in 2007. The grant deed restricted use of the property to golf course only and obligated Majestic to maintain the golf course in as good a condition as that of other local golf courses and to maintain the landscaped extensions that created open spaces among the residences. To secure observance of the use restriction and performance of the maintenance obligations, Majestic executed a performance deed of trust (PDOT) by which it granted in trust for the prior owners' benefit its interest in the golf course. The PDOT was also subordinated "to a security interest in the [golf course] in favor of a third party lender securing one or more promissory notes for one or more loans of up to a maximum principal amount of $1,250,000." The prior owners assigned their interest in the PDOT to the Association in 2012.

After appellants took over the golf course, they began using it as a site for events of which the Association disapproved. Appellants also stopped paying their portion of shared maintenance expenses. Grass and trees died, a lake dried up, and the landscaped extensions deteriorated.

Litigation commenced in 2013. Majestic sued the Association for interference with prospective economic advantage, misrepresentation, promissory estoppel, declaratory relief, and quiet title. The Association countersued for breach of contract, common counts, declaratory relief, quiet title, and foreclosure under the PDOT. The Association alleged the Huangs were alter egos of Majestic.

The trial court held a bench trial in 2015. It found the Huangs were alter egos of Majestic and ruled in favor of the Association. The court entered a judgment that included a permanent injunction directing appellants to

repair the golf course and its landscaped extensions and to abide by maintenance standards attached to the judgment. The court retained jurisdiction to order foreclosure under the PDOT if appellants disobeyed the injunction. Appellants appealed, and we affirmed the judgment.

Later the Association moved the trial court to enforce the judgment by directing a foreclosure sale of the golf course or, alternatively, by appointing a receiver to take over the golf course and bring it into compliance with the judgment. The court appointed a receiver, but it became clear by September 2022 that he could not rehabilitate the golf course. The Association then moved the court to order foreclosure under the PDOT. The court held an evidentiary hearing, set the value of the PDOT for purposes of the foreclosure sale at $2,748,434.37, and in 2023 entered a foreclosure decree and issued a writ of sale. On appellants' appeal, we modified the decree by reducing the value assigned to the PDOT to $2,503,500 and affirmed the decree as modified.

B.     *Current Case*

While the prior case was pending, Majestic granted Chu a deed of trust to the golf course to secure payment of indebtedness evidenced by a promissory note for $3,468,012. The deed was recorded in September 2019.

In January 2020, the Association filed the current case against appellants and Chu challenging the validity of the deed of trust that Majestic had given to Chu. The Association alleged the Huangs were alter egos of Majestic and gave Chu the deed of trust to hinder or delay the Association in its efforts to enforce the judgment in the prior case. The Association asserted counts under the Uniform Voidable Transactions Act (UVTA; Civ. Code,

§ 3439 et seq.), for declaratory relief, and for quiet title.[2]  The Association sought a judgment declaring the deed of trust from Majestic to Chu void and setting it aside, declaring the PDOT superior to any other conveyance of the golf course by appellants, and again declaring the Huangs to be alter egos of Majestic.

The trial court held a bench trial over the course of four days in September 2023.  Chu testified he and other investors made four loans to Majestic between 2007 and 2019, an initial loan of $2.2 million to purchase the golf course and three subsequent loans totaling $1.1 million.  Chu said a promissory note for $3,468,012 represented the amount of principal and interest Majestic owed him and the other investors as of January 25, 2019.  Hai Huang testified the promissory note was for all the loans Chu and the other investors had made to Majestic.  Hai Huang said Majestic gave Chu a deed of trust because he and the other investors became aware of the litigation with the Association and requested "something to protect their benefits and interests throughout this whole matter."  On cross-examination, Hai Huang testified about Majestic's managers and members, meetings and records, funding sources, and other topics relevant to alter ego liability.  The parties jointly introduced the deed to the golf course the prior owners gave Majestic and the related purchase agreement, the PDOT, the deed of trust Majestic gave Chu, promissory notes Majestic gave to Chu, tax forms Majestic filed, Majestic's bank statements, and other documents.

During the bench trial, appellants filed a motion for judgment.  (Code Civ. Proc., § 631.8.)  They argued the Association could not recover under the UVTA because it had no "right to payment" from them and therefore was not

___

2     The parties resolved the quiet title count by stipulation.  That count will not be discussed further.

a "creditor" under the statute.  (Civ. Code, §§ 3439.01, subds. (b), (c) [defining "creditor" as "a person that has a claim" and "claim" as "a right to payment"], 3439.07 [specifying remedies available to "a creditor"].)  Appellants also argued the deed of trust to Chu did not injure the Association because the PDOT contained a subordination clause in favor of third-party lenders to secure loans totaling up to $1.25 million.[3]

In opposition to the motion, the Association argued it was a "creditor" under the UVTA, and even if it were not, other remedies were available to the Association in addition to those provided by the UVTA.  The Association argued that on its declaratory relief count the trial court could declare void and set aside the deed of trust that Majestic gave to Chu.  The Association also argued the court could grant those remedies based on a common law fraud count, which the Association could amend its pleading to assert.

The trial court agreed with appellants that the Association was not a "creditor" under UVTA, because the PDOT gave it a right to performance, not a right to payment.  The court stated that because the Association's theory under the UVTA was that the deed of trust Majestic gave Chu was fraudulent, allowing the Association to amend its pleading to assert a fraud count based on the same conveyance would not prejudice appellants.  It thus denied appellants' motion for judgment and granted the Association leave to amend.

The Association amended its pleading to add a count labeled "fraud" in which it alleged appellants created a "sham" deed of trust to Chu "in an effort to fraudulently hinder, delay or prevent the Association from being able to

---

[3]    Paragraph 10 of the PDOT states:  "The Beneficiary hereby agrees to subordinate this Deed of Trust to a security interest in the Trust Estate in favor of a third party lender securing one or more promissory notes for one or more loans of up to a maximum principal amount of $1,250,000."

foreclose on the [golf course]." It alleged the foreclosure decree it had obtained in the prior litigation would be "effectively meaningless if the [golf course] is incumbered by the sham [d]eed of [t]rust." For relief on the new count, the Association sought a judgment canceling the deed of trust given to Chu "as a sham and a fraud."

After the parties filed written closing arguments, the trial court issued its statement of decision. The court found the testimony of Hai Huang and Chu about the loans to Majestic was not credible and promissory notes dated August 1, 2007 ($2.2 million), and January 25, 2019 ($3,468,012), were not authentic. The court credited discovery responses and testimony of Jen Huang in the prior case and "found that the source of the funds for the purchase, maintenance and attorney fees costs was from the Huangs and Jen Huang's family and that there were no deeds of trust securing any loaned amounts." The court was "convinced by a preponderance of the evidence that no deed of trust was executed in the purchase or maintenance of the golf course." The court found the promissory notes were "fraudulent and fictitious" and the deed of trust given to Chu to secure repayment of the notes was "based on fraud" and ruled those documents were "void." The court ruled the finding in the prior case that the Huangs and Majestic were alter egos was entitled to preclusive effect. The court dismissed the Association's UVTA claim with prejudice.

On August 21, 2024, the trial court entered a judgment. Under the heading, "**ALTER EGO LIABILITY**," it declared that under the doctrine of collateral estoppel appellants were bound by the alter ego finding in the prior action. Under the heading, "**FRAUD/DECLARATORY RELIEF**," the court declared the deed of trust from Majestic to Chu was "based on fraud" and therefore "**VOID**," and the PDOT was "senior and superior to any conveyance

of the [golf course] by [appellants] up to and including the time of entry of this [j]udgment." The court also declared the Association was "the prevailing party for all purposes in this action."

## II.

## DISCUSSION

Appellants claim the trial court committed three prejudicial errors: (1) giving preclusive effect to the alter ego finding in the prior case; (2) granting relief based on fraud when the Association sustained no damages or injury; and (3) allowing the Association to amend its pleading to assert a fraud count. They ask us to reverse the judgment in its entirety or, alternatively, to modify the judgment by striking the portion concerning alter ego liability.[4]

---

[4] Eleven days before the appeal was set for oral argument, appellants filed a motion to postpone argument based on a recent substitution of attorneys. Appellants claimed their new attorneys needed more time to prepare because they "were only recently advised" that the attorney who handled their prior appeals had retired and his firm refused to release the client files to the new attorneys. Our investigation revealed that appellants' former attorney (Michael G. Kerbs of Reid & Hellyer) had retired in November 2025. After his retirement, another attorney in the same law firm (Douglas A. Plazak) filed appellants' reply brief and opposition to respondent's motion to dismiss the appeal. Notices setting the appeal for oral argument on April 13, 2026, and continuing argument to May 12, 2026, were served, respectively, on February 24, 2026, and April 6, 2026. Appellants filed substitution of attorney forms on April 22 and 30, 2026, and filed the motion to postpone oral argument on May 1, 2026. We issued a tentative ruling to deny the motion and invited comments at argument. Appellants' new attorney (Ignacio J. Lazo of Estavillo Law Group) appeared and stated he was prepared to argue the legal issues in the appeal but not any issues related to the factual record. We have substantial doubts about appellants' claims that they only recently learned their prior attorney had retired and could not be ready to argue the appeal by May 12. We find no good cause to postpone oral argument and deny the motion.

A.    *Jurisdiction*

Before we may address the merits, we must decide a jurisdictional challenge the Association raises by a motion to dismiss.  We have jurisdiction to consider an appeal only by a party with standing to appeal (*Estate of Bartsch* (2011) 193 Cal.App.4th 885, 890), and only a party "aggrieved" by a judgment has standing (Code Civ. Proc., § 902; *Estate of Kempton* (2023) 91 Cal.App.5th 189, 202).  The Association argues appellants are not aggrieved because the trial court determined that the promissory notes and the deed of trust given to Chu were void as fraudulent and fictitious, benefiting appellants by effectively discharging their obligations under those documents.  The Association maintains that only Chu was aggrieved by the judgment voiding the documents, but Chu did not appeal, his time to appeal expired, and appellants may not assert his interests.  We disagree.

The judgment does more than merely void the promissory notes and deed of trust that Majestic gave Chu.  It declares the Association the prevailing party and the Huangs alter egos of Majestic.  Appellants are thus liable for the Association's costs.  (See Code Civ. Proc., § 1032, subd. (b) [prevailing party entitled to recover costs]; *Kao v. Joy Holiday* (2020) 58 Cal.App.5th 199, 205–208 [alter egos personally liable for costs].)  A party liable for costs under a judgment is "aggrieved" by the judgment and has standing to appeal it.  (Code Civ. Proc., § 902; *Cheveldave v. Tri Palms Unified Owners Assn.* (2018) 27 Cal.App.5th 1202, 1221; *Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1026–1027.)  We therefore deny the motion to dismiss the appeal and proceed to the merits.

B.    *Alter Ego Liability*

Appellants complain the trial court prejudicially erred by giving preclusive effect to the finding in the prior case that the Huangs were alter

egos of Majestic. They contend, "Given the passage of time, the difference in parties, and the factually specific inquiry required to find alter ego liability, the issue of alter ego was not identical to the issue decided in [the prior case]" and "issue preclusion should not have been applied." Appellants say the policies underlying collateral estoppel and alter ego liability do not support application of collateral estoppel to the issue of alter ego liability. They also say the alter ego doctrine did not apply because the Association sought only to void the deed of trust Majestic had given Chu and offered no evidence it would suffer an injustice if Majestic were treated as a legal entity distinct from the Huangs for purposes of that conveyance. Appellants ask us to strike the portion of the judgment concerning alter ego liability.

A trial court's application of collateral estoppel presents a question of law we review de novo. (*Angel Lynn Realty, Inc. v. George* (2025) 114 Cal.App.5th 655, 664 (*Angel Lynn*).) Collateral estoppel (also called issue preclusion) generally bars relitigation of an issue that was necessarily decided in a prior case between the parties that proceeded to a final judgment on the merits. (*Samara v. Matar* (2018) 5 Cal.5th 322, 327; *Angel Lynn*, at p. 664.) " '[T]he estoppel effect of a judgment extends only to the facts in issue as they existed at the time the prior judgment was rendered. [Citation.] Some issues are not static, that is, they are not fixed and permanent in their nature. When a fact, condition, status, right, or title is not fixed and permanent in nature, then an adjudication is conclusive as to the issue at the time of its rendition, but is not conclusive as to that issue at some later time.' " (*Angel Lynn*, at p. 665.) Collateral estoppel does not "prevent a re-examination of the same question between the same parties where, in the interval between the first and second actions, the facts have materially changed or new facts have occurred which may have altered the legal rights

or relations of the litigants." (*Hurd v. Albert* (1931) 214 Cal. 15, 26; accord, *Angel Lynn*, at p. 664.)

"[T]he issue of alter ego liability is one of those issues that is not static and can change over time." (*Angel Lynn, supra*, 114 Cal.App.5th at p. 665.) The issue "arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests." (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 (*Mesler*).) When an entity with limited liability (e.g., a corporation or limited liability company) has committed a wrongful act, the alter ego doctrine sometimes permits a court to disregard the entity's separate legal identity and to impose personal liability on the individuals who own or operate the entity. (*Ibid.*; *Angel Lynn*, at p. 663.) There are two requirements for application of the doctrine: (1) the entity and the individuals have not observed a distinction between their respective ownership and other interests sufficient to maintain separate personalities; and (2) an injustice would result if the wrongful act were treated as that of the entity alone. (*Mesler*, at p. 300; *Angel Lynn*, at pp. 662–663.)[5] "The plaintiff has the burden of establishing both requirements." (*Angel Lynn*, at p. 667.) "Whether a party is liable under an alter-ego theory is normally a question of fact" (*Zoran Corp.*

---

[5] "The factors which may show the 'unity of interest' issue vary according to each case and are fact specific. [Citation.] Among the facts which can be considered are financial issues (e.g., was the corporation adequately capitalized?); corporate formality questions (e.g., was stock issued, are minutes kept and officers and directors elected, are corporate records segregated?); ownership issues (e.g., what is the stock ownership picture?); commingling issues (e.g., are corporate assets commingled . . . ?); etc. [Citation.] If these factors show a unity of interest, and it is also shown that honoring the corporate shell would promote a fraud or injustice, the third party may be permitted to 'pierce the corporate veil' and hold the [individuals] liable for the corporate activities." (*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1285, fn. 13.)

*v. Chen* (2010) 185 Cal.App.4th 799, 811 (*Zoran Corp.*)) and "depend[s] on the circumstances of each particular case" (*Mesler*, at p. 300).

We conclude the Association could not rely on the preclusive effect of the judgment in the prior case to establish alter ego liability in this case. The decision to impose such liability depends on " 'whether *in the particular case presented and for the purposes of such case* justice and equity can best be accomplished and fraud and unfairness defeated by a disregard of the distinct entity of the corporate form.' " (*Mesler, supra*, 39 Cal.3d at p. 301, italics added.) Such equitable considerations differed in the two cases between the parties. In the prior case, the Association obtained a permanent injunction requiring Majestic to perform its obligations under the PDOT to maintain the golf course. On appeal from the judgment, we upheld the trial court's implied finding it would be unjust not also to enjoin the Huangs, as Majestic's alter egos, personally to perform the obligations. In the current case, the Association obtained a judgment setting aside Majestic's conveyance to Chu of a deed of trust to the golf course, a transaction that occurred more than three years after entry of judgment in the prior case and had nothing to do with maintenance of the golf course. Because the issue of imposing personal liability on the Huangs for the sham conveyance to avoid injustice was not "actually litigated and determined in the [prior] action" (*McCready v. Whorf* (2015) 235 Cal.App.4th 478, 482), the prior judgment did not collaterally estop appellants from contesting alter ego liability in the current case. (See *Favila v. Pasquarella* (2021) 65 Cal.App.5th 934, 946 [no collateral estoppel when second case challenged conduct that occurred after judgment in first case]; *United States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 611 [no collateral estoppel when prior judgment rested on factual and legal foundation different from that of current case].)

The Association also did not sustain its burden of proof to establish alter ego liability in the current case.  At trial, the Association elicited testimony from Hai Huang about whether Majestic held annual meetings, whether it kept minutes and other records, whether it maintained a separate office, its funding sources, its managers and members, and other topics relevant to the unity-of-interest requirement for alter ego liability.  But the Association presented no testimony or other evidence on the avoidance-of-injustice requirement of alter ego liability.  "Without such evidence, the alter ego doctrine cannot be invoked." (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 539.)

It is no answer to say, as the Association does, that "[a]ppellants point to exactly zero evidence in the record demonstrating that they have ceased abuse of the corporate form" and "made no offer of proof as to what changed between the prior finding and the fraudulent conveyance action that would have been important in the identification of a new and improved distinction between the Huangs and Majestic."  It was the Association's burden, not appellants', to establish the requirements for imposition of alter ego liability. (*Angel Lynn, supra*, 114 Cal.App.5th at p. 667; *Zoran Corp., supra*, 185 Cal.App.4th at pp. 811, 815.)  Where, as here, the plaintiff had a full opportunity to present its case and the evidence is insufficient to support a ruling in its favor on an issue on which it had the burden of proof, no new trial is allowed, and the defendant is entitled to a ruling in its favor. (*Copenbarger v. Moris Cerullo World Evangelism, Inc.* (2018) 29 Cal.App.5th 1, 15–16; *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 289.)  We thus strike from the judgment the portion concerning alter ego liability.

C.    *Fraud as Basis for Relief*

Appellants next challenge the trial court's reliance on fraud as the basis to grant the Association relief. Appellants contend the Association had no valid fraud claim because the Association: (1) stipulated it was not seeking any damages, which appellants say are an essential element of fraud; and (2) suffered no injury from Majestic's conveyance of the golf course in trust to Chu, which appellants say did not put the golf course totally out of the Association's reach as a creditor but only reduced its lien priority in accordance with the subordination clause of the PDOT. Appellants complain the presence of an invalid fraud claim "tainted" the trial by causing the court to focus on the "badges of fraud at the time of the purchase of [the golf course] rather than the evidence of proper antecedent debt which occurred thereafter" and was secured by the deed of trust to Chu. Appellants ask us to reverse the judgment.

Appellants' challenge is based on a mischaracterization of the claim on which the trial court granted the Association relief. We determine the nature of a claim from the facts pleaded and remedy sought, not from the label assigned by the pleader. (*Cox v. Superior Court* (2016) 1 Cal.App.5th 855, 859.) Although the Association's operative pleading included a count labeled "fraud," it was not a common law claim for actual fraud, which would have required pleading and proof of a definite amount of damages incurred from reliance on a misrepresentation. (See, e.g., *Anderson v. Deloitte & Touche* (1997) 56 Cal.App.4th 1468, 1474; *Nagy v. Nagy* (1989) 210 Cal.App.3d 1262, 1268–1269.) Rather, to conform to the proof at trial, the Association alleged appellants recorded a "sham" deed of trust to Chu "in an effort to fraudulently hinder, delay or prevent the Association from being able to foreclose on the [golf course]" and sought "a judgment cancelling the [deed of

trust] as a sham and a fraud."  Based on the same allegations, the Association also sought a judgment declaring the deed of trust to Chu was "void as a fraudulent conveyance" and the PDOT was "senior and superior to any conveyance of the [golf course]."  The trial court found the deed of trust was "based on fraud" and granted the Association the declaratory relief it had requested.

The trial court properly awarded that relief even though the Association neither pleaded nor proved any damages.  "[I]n California a suit to have an instrument canceled or adjudged void is akin to a common suit in the old chancery practice and is purely equitable." (*Corrigan v. Stiltz* (1965) 233 Cal.App.2d 381, 387.)  The remedy has been codified[6] and is available when an instrument is void or voidable due to fraud.  (*U.S. Bank National Assn. v. Naifeh* (2016) 1 Cal.App.5th 767, 778 (*U.S. Bank*).)  " '[T]he use of the term *fraud* has been wider and less precise in the chancery than in common-law courts' " and " 'includes all acts, omissions, or concealments by which one person obtains an advantage against conscience over another, or which equity or public policy forbids as being to another's prejudice.' "  (Black's Law Dict. (12th ed. 2024) pp. 798–799; accord, *Dawson v. Martin* (1957) 150 Cal.App.2d 379, 383 [defining "fraud in equity"]; see *Butler America, LLC v. Aviation Assurance Co., LLC* (2020) 55 Cal.App.5th 136, 148 ["The foundation of equity is good conscience"].)  Conveying the golf course in trust to Chu as purported security for repayment of $3.3 million in loans the trial court found he never made was an unconscionable act prejudicial to the Association and constituted a fraud in equity.

---

6      "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."  (Civ. Code, § 3412.)

Under the subordination clause of the PDOT, the effect of the sham conveyance was to make the Association's lien on the golf course junior to Chu's to the extent of $1.25 million. (See fn. 2, *ante*.) Although loss of lien priority is not loss of money, to have an instrument adjudged void "[i]t is not necessary to allege or prove any pecuniary loss so long as the record indicates there was injury or prejudice resulting from the fraud. [Citation.] It is sufficient to show that the plaintiff is in a worse position than he otherwise would have been." (*Turner v. Turner* (1959) 167 Cal.App.2d 636, 641 (*Turner*).) Here, a golf course was purchased in 2007 for $2.2 million but its condition is now greatly deteriorated. The asset was later encumbered with a sham lien for $1.25 million. That lien would have to be paid before the Association's lien of more than $2.5 million could be paid in a foreclosure sale of the golf course. Given the reduced value of the golf course because of its decay from lack of proper maintenance by appellants, appellants put the Association in a worse position than it would have been in absent the fraud. That change of position was an injury sufficient to allow the trial court to exercise its equitable power to declare the deed of trust to Chu void.[7]

---

[7] We reject appellants' argument the Association failed to prove the required "specific injury" because no property it was entitled to reach "was placed beyond [its] reach." Appellants cite the rule from cases applying UVTA's predecessors that a debtor's transfer does not injure a creditor unless the transfer puts beyond reach property the creditor could use to pay the debt. (*Costa v. Neves* (1938) 12 Cal.2d 121, 125; *Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 845; *Mehrtash v. Mehrtash* (2001) 93 Cal.App.4th 75, 80.) Even if the rule applied to this case notwithstanding the dismissal of the UVTA count (cf. *PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 170–171 [UVTA statute of repose applies whether attack on fraudulent transfer is brought under UVTA or otherwise]), it would not defeat the Association's right to relief. As we explained in the text, the sham deed of trust to Chu

The trial court's decision to grant relief in the form of a declaratory judgment under Code of Civil Procedure section 1060 was also proper. "An action brought under this section of the code for declaratory relief is an equitable proceeding. The remedies therein provided for are cumulative. [Citation.] The powers of a court acting under this section in granting declaratory relief are as broad and extensive as those exercised by such court in any ordinary suit in equity." (*Adams v. Cook* (1940) 15 Cal.2d 352, 362.) The statute authorizes a court to resolve an actual controversy between parties concerning a written instrument by issuing a judgment determining the validity of the instrument or declaring the parties' rights and duties thereunder. (Code Civ. Proc., § 1060.) In particular, in a proceeding for declaratory relief a court may determine the validity of a deed of trust (*R.G. Hamilton Corp. v. Corum* (1933) 218 Cal. 92, 95; *Lomanto v. Bank of America* (1972) 22 Cal.App.3d 663, 667–668) or the priority of a lien (*First Bank v. East West Bank* (2011) 199 Cal.App.4th 1309, 1312; *Sasaki v. Kai* (1942) 56 Cal.App.2d 406, 407–408). The trial court thus had the power to issue a declaratory judgment resolving the parties' dispute over the validity of the deed of trust Majestic gave Chu and whether and to what extent that deed of trust subordinated the Association's security interest under the PDOT.

---

effectively placed beyond the Association's reach $1.25 million of equity in a wasting asset the Association could use to satisfy its lien.

We also reject appellants' related arguments the Association "suffered no damage" because it "contractually assumed the risk that its interest under the [PDOT] would become junior to a $1.25 million loan" and because "undisputed evidence" showed "loans made in 2015 and 2019 were proper antecedent debts under California law and the subordination clause." Those arguments assume there were bona fide loans from Chu to Majestic. But the trial court "disbelieve[d]" the testimony of Chu and Hai Huang about the loans, "distrust[ed]" the authenticity of the related documents, and determined the promissory notes were "fraudulent and fictitious."

D.    *Leave to Amend*

Appellants' final challenge is to the trial court's decision to let the Association amend its complaint to conform to proof by adding a fraud count. Appellants contend the court should have denied leave to amend because that count was a "disguised UVTA claim[ ]" that "suffer[ed] from the same fatal flaws" as the UVTA claim (i.e., the conveyance to Chu caused the Association no damages or other injury).  We review the court's decision for abuse of discretion (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31; *Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 359 (*Espejo*)) and find none.

A proceeding under the UVTA is not the exclusive way to attack a fraudulent conveyance.  (Civ. Code, § 3439.12; *Optronic Technologies, Inc. v. Celestron Acquisition, LLC* (2025) 108 Cal.App.5th 770, 785.)  Remedies under the UVTA "are cumulative to the remedies applicable to fraudulent conveyances that existed before the uniform laws went into effect."  (*Cortez v. Vogt* (1997) 52 Cal.App.4th 917, 929.)  One such remedy is a suit in equity to adjudge a conveyance void as fraudulent (Civ. Code, § 3412; *U.S. Bank, supra*, 1 Cal.App.5th at p. 778; *Richardson v. Michel* (1941) 45 Cal.App.2d 188, 196), and as we have explained the Association suffered an injury sufficient to allow it to maintain such a suit (*Turner, supra*, 167 Cal.App.2d at p. 641).  Because the fraud count merely changed the legal theory by which the Association sought to void the conveyance to Chu and was based on the same set of facts that underlay the dismissed UVTA count, the amendment of the pleading to add the fraud count did not prejudice appellants and the trial court did not abuse its discretion by allowing it.  (*Espejo, supra*, 13 Cal.App.5th at pp. 359–360; *Glaser v. Meyers* (1982) 137 Cal.App.3d 770, 776–777; *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 636–647.)

E.    *Attorney Fees and Other Costs*

The Association asks us to award the attorney fees and other costs it incurred in this appeal.  In its brief, it relies on an attorney fee provision in the purchase agreement between Majestic and the prior owner of the golf course and on statutes authorizing recovery of attorney fees and other costs incurred to enforce a judgment (Code Civ. Proc., §§ 685.040, 685.070; Civ. Code, § 1717).  At oral argument, the Association's attorney referred to the attorney fee provision of the PDOT.  Appellants argue the request is not properly before us and should be made in the prior action in which the judgment sought to be enforced was entered.

When, as in this case, we modify a judgment, "the opinion must specify the award or denial of costs."  (Cal. Rules of Court, rule 8.278(a)(3).)  We have discretion to award or to deny costs as we deem proper.  (*Id.*, rule 8.278(a)(3), (5); 9 Witkin, Cal. Procedure (6th ed. 2021) Appeal, § 988, pp. 982–983.)  The results of this appeal are mixed.  Appellants prevailed on the motion to dismiss the appeal and on their challenge to the trial court's imposition of alter ego liability.  The Association prevailed on appellants' challenge to the trial court's award of relief declaring Majestic's deed of trust to Chu void and the PDOT senior and superior to other conveyances of the golf course.  Because the Association achieved its main objective in the litigation, we find it is the prevailing party on appeal and is entitled to recover costs, including reasonable attorney fees as authorized by the PDOT.  (Code Civ. Proc., §§ 1032, subd. (b), 1033.5, subd. (a)(10)(A); see *Schaffter v. Creative Capital Leasing Group, LLC* (2008) 166 Cal.App.4th 745, 759 [attorney fees authorized by parties' contract are available for services at trial and on appeal].)

"[A]n appellate court by its judgment determines the final award of costs on appeal (who shall recover the same), and the trial court determines the specific judgment (what items of costs the entitled party may recover under the general award)." (*Wilson v. Sharp* (1959) 175 Cal.App.2d 691, 693–694.)  Upon issuance of the remittitur and timely filing of a memorandum of costs and motion for attorney fees, the trial court shall award the Association its costs and reasonable attorney fees incurred on appeal.  (Cal. Rules of Court, rules 3.1700(a)(1), 8.278(c)(1).)  In determining that amount, the court shall apportion fees among the issues on appeal and award fees only for those on which the Association prevailed.

## III.

## DISPOSITION

The judgment is modified by striking the portion concerning alter ego liability (page 2, lines 13–20), and, as so modified, is affirmed.  Respondent is entitled to costs and reasonable attorney fees incurred on appeal.

RUBIN, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.